Number 171121, U.S. Bank, N.A. v. HLC Escrow, Inc. et al. Good morning, your honors. May it please the court, I'm Ben Campo and I represent the U.S. Bank. I request that two minutes be set aside for rebuttal. In this case, the district court erred when it applied Maine's six-year statute of limitations to the cause of action brought against First American Title Insurance Company and HLC Escrow. The error is because it failed to adhere to the plain language of 14 MRSA, Section 751. Section 751 explicitly states that personal actions on contracts or liabilities under seal, promissory notes signed in the presence of an attesting witness, or on the bills, notes, or other evidences of debt issued by a bank shall be commenced within 20 years after the cause of action occurs. In what way is your client suing on the mortgage or note that's at issue here? Clearly, the mortgage and note are central issues in the case and your client is claiming damages resulting from a misdescription of property, of the security for the mortgage. So, again, it's factually the mortgage and note are central to the case, but in terms of the theories of liability that you pursue, failure to settle on behalf of the title insurance company, negligence on behalf of the escrow agent, in what way do any of those theories of liability actually reflect a suit, a personal suit on the mortgage and note? In the creation of the mortgage, Your Honor. Sorry. In the creation of the mortgage. The mortgage was created with the assistance of First American Title Insurance Company as well as HLC Escrow. It was created by those two entities because First American Title Insurance Company provided the property description. Without that property description that was issued pursuant to a title insurance policy, there would not be any mortgage. That explains why the mortgage is relevant to a case against First American. It doesn't answer Judge Lopez's question. Is there a suit here on the mortgage or note? The preposition on is the operative word. The suit is on the negligence involved in the creation of that. And so, taking the plain language and reading that language in as broad a context as possible in order to effectuate the purpose of 751, it's our contention that that's why the suit is brought. While it is a negligence action and there's a breach of duty asserted against HLC, and that necessarily doesn't say whether they breached duties within the mortgage specifically or within the note, what it does get to is this mortgage was defective. It was a defective product and the liability is based on the defect created within the mortgage. And that defect therein falls to a liability on the mortgage within the scope of 751. But you will agree that because this is a diversity case, we are bound by the law court's iteration of Maine law as it reads the statutes? Yes, of course. But doesn't the Adams footnote in the Maine Supreme Court say specifically that the suit must be on the instrument? The Adams case is distinguished. I'm not talking about the case. I'm talking about the plain statement made in that footnote which the commentators have repeatedly cited as illustrating what Maine law is under 752. Well, it's our argument in this case that while that footnote is helpful, it is not the holding and it's dicta within it. It may provide guidance, but we do not argue that it's the holding. We believe that it provides guidance, but I think it has to be taken within the umbrella of the facts of the Adams case itself. What case of the Maine Supreme Court should we look at as supporting your position? I think the case that's probably best to the view is the town of Alexander v. Maine Bonding and Casualty Company. I believe that's best. I think it most likely applies to First American really. The law court held that in that case, the bond being a sealed instrument, but I think a sealed instrument was the tool by which it fell under SEP 751. But that was a suit on a bond, was it not? Yes, it was, but we're saying in this case, we're drawing the parallel between a bond and an insurance policy as far as it relates to First American Title Insurance Company. And so the court held that the 20-year statute of limitations applied in that context where you had an indemnifying agent acting for the bond. And in this situation, First American Title Insurance Company is an indemnifying body and the insurance policy serves as the analogous tool to the bond. Now, litigation on insurance policies is quite common. Yes. And we've seen a number of cases out of Maine over the years involving suits on insurance policies in various forms. I'm not aware of a single time that the law court has ever intimated or applied anything but the six-year statute to a suit on an insurance policy. Certainly the language of 752 doesn't indicate that it extends to insurance policies. 752 is the six-year statute. Excuse me, 751. No, you're correct. The language in 751 does not extend to insurance policies, but it does not necessarily exclude them within the broadness of the liability on the mortgage. And there have been cases from the Maine law court dealing extensively with insurance policies, but it's clear that I don't believe a case of this sort has reached the law court. And I think this case is different from other previous cases. If I could go back to the Adams matter and distinguish that case and why it should be held in a separate view from this one is because in Adams, the bank was attempting to sue a stranger to the instruments. And what I mean by that is Mr. Adams did not sign the note, did not sign the mortgage, just owned the subject property that was encumbered. That was it. In these cases, in this situation, HLC escrow closed the loan. First American title insurance company insured the policy, provided the property description. They're not strangers to the transaction. And more to the point, these were not equitable actions brought against that party. Counsel, with respect to your claims against the title insurance company, I gather it's your position that even if you have to accept the fact that the six-year statute implies that you're well within that because there was a denial of the claim as recently as 2016. Is that correct? Yes, Your Honor. The trial judge points out that that more recent claim denial is just a repeat of two earlier denials and takes the position that you can't avoid the statute of limitations by repeatedly making the same claim only to have it denied on the same basis. What's wrong with the trial court's analysis on that point? The trial court's analysis is incorrect because it views the claim as the same claim. It's not the same claim. The claim in 2010 was a claim seeking defense. It was seeking defense in the bankruptcy court to protect the bank's interest in the property that was at issue. The claim brought to First American now is a claim for indemnification. The main law court has viewed duties to defend and duties to indemnify differently, and they've held that those claims are different claims in and of themselves. It's our position that the U.S. District Court was incorrect in its analysis of finding it to be the same claim. The rationale for the denial is exactly the same in all three instances, is it not? It appears to be, but I think that there are not enough facts to really, in front of the district court, to truly know the denial. The denial has, at least in its most material form, has just said we insured a piece of property and it had a property address in Winterport, Maine, therefore that's fine, but that was not even really the fundamental issue when the new claim was filed for indemnification. That claim involved the fact that the policy limit called for a $200,000 policy limit and you now were basically provided a property description for a $40,000 piece of property. You made a mistake. There's already a record in the bankruptcy court about the fact that the debtors intended to pledge the property with the residents on it, and so those facts need to be really brought out in order to determine if this claim was denied for the same reasons as before, or if it was denied for different reasons. And more to the point, it's still a different claim, and therefore the six-year statute of limitations applies, could apply, and we still fall under that claim. Good morning, Your Honor. David Sully for First American Title Insurance Company. May it please the Court, there are two recent Maine law court cases that positively demonstrate that the U.S. District Court below got it right. Are these cases in your brief? They are both in the brief. The first case, Your Honor, as you've mentioned, as Your Honors have mentioned, it's U.S. Bank v. Adams, the same bank that the appellant is representing today. Footnote 2, as Your Honors have pointed out, is on point. It says that in order for the 20-year statute to apply, for that portion of the statute to apply, there must be an action to enforce a note of mortgage. There is no action in this case to enforce a note of mortgage against either First American or HLC. Neither of these parties are parties to the note or to the mortgage, and to say for the first time here today that First American somehow wrote the mortgage is not correct is not in the evidence. A title insurance company receives the mortgage and then insures what they receive. Counsel, I gather the rationale for the seemingly long statute of limitations, 20 years, has to do with how long a note of mortgage lasts, 30 years typically. Is that correct? And that's why the longer statute of limitations seems to be appropriate, a rationale that truly does not apply here. Right, but I don't think that's necessarily correct. The statute, of course, Your Honor, is probably 100 years old, and 30-year mortgages I believe started in the Fannie Mae, Freddie Mac age in the 60s or 70s. There are many different explanations from 100 years ago about why that statute is there. It is unique among other states, but the key is that if you look at the relevant portion of that statute and you look at footnote 2 of the Adams case, the U.S. bank cannot apply the 20-year statute of limitations unless it's an action to enforce a note of mortgage, which is absolutely not the case here. So Adams is dead on point. The other case that's right on point, also cited in the brief, Judge Selye, is Osprey Landing v. First American, where the court talks about triggering events under an insurance policy. And here, as has been mentioned by Your Honors, the triggering event is the wrong description, allegedly wrong description of the mortgage. The other side is claiming there's something wrong with the property description, and that if you look at the denials, which are all in the record, all of those denials say the action is denied because the property description is incorrect. Now, the other side is saying there might be more things that should be put into evidence. Well, the other side didn't put those things into evidence. If the other side had more facts, they should have presented those facts. We have the facts there in front of us today. And this talk about evidence is confusing me. I thought this case was decided on a motion to dismiss. It is a motion to dismiss. So there's no evidence at all. It's simply a question of whether the facts alleged in the complaint are sufficient to state a claim upon which relief can be granted. Completely correct, of course, Your Honor. But what I'm saying is look at those facts. The complaint actually had a lot of the facts attached to it, and the record in this case has facts attached to it. And if you look at all of those insurance denials, you'll see that it's all the same claim. So the other side made their claim six years and three months before they filed suit. Statute and limitations in Maine, Section 752 of Title 14 is six years, and they missed it. It's time-barred. They can't get around the statute of limitations by simply repeating the same claim over and over and over again. That would circumvent the purpose of the statute of limitations. If the Osprey Landing case makes it clear that we look to the triggering event, and the triggering event here was 2010 when First American denied the claim because it had the wrong property description, allegedly the wrong property description. They then apparently made the claim again and again. First American's denials were based on the same thing. So there's only one triggering event. The claims themselves, there's no change. The other side argues that the scope might have changed. But again, if you look at Osprey Landing versus First American, a Maine law court case, 2017, it makes it clear that you look at the triggering event, of which there was only one in this case. And just citing the same triggering event time and time again doesn't get around that problem. The scope of Osprey Landing makes it clear that you don't look at scope. You look at triggering event. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Kevin Polanski on behalf of HLC Escrow. Section 751 could not be more clear. It does not apply to this case. Section 751 applies to a personal action on a promissory note. It doesn't say relating to a promissory note. The Adams case is directly on point. Adams says it's to enforce a note. HLC Escrow is not a borrower. It's not a debtor. It didn't assume the obligations under the note. And 751 would be inapplicable to HLC Escrow in this case. In addition, the appellant raises for the first time that Adams doesn't apply because it was dicta. For note two, it was dicta. You'll find that nowhere in the lower court briefing and nowhere in their briefing here. They tried to distinguish Adams, not in their opening brief, but in their reply brief, saying that it dealt with equitable actions. Well, 752 deals with equitable actions in all actions unless otherwise set forth by statute. So they've waived that argument in addition to the fact that it's just clearly up there. I don't think that's the sort of argument you can waive to characterize what a state court's holding is. I mean, we've got an independent obligation to get that right as to whether the main court has made a holding or whether that statement is dicta. I'm not sure it makes a difference in the result because our case law says that we give considerable respect to what we call considered dictum from the state's highest court. But that's a question that we've got to confront. We can't decide that on the basis of waiver. Understood, Your Honor. With respect to U.S. Bank, I mean, U.S. Bank should be familiar with Adams. As my brother pointed out, U.S. Bank was the party that judgment entered against in that case. U.S. Bank is a sophisticated party. Here they haven't alleged, even despite the fact their claim is time barred, they haven't alleged any sort of duty that HLC would owe to it. There's no special relationship between the parties. I mean, if you recall from the record, U.S. Bank purchased this note in 2014. By that point, they had available to it the fact that the mortgage with the undeveloped parcel was a recorded document. They had available to it a 2009 bankruptcy filed by the debtors, an adversarial proceeding that was filed in that bankruptcy, in which judgment entered in favor of the debtors, saying that there would be no reformation of the mortgage. That was then affirmed by the First Circuit, in which the judgment came back down. The debtors didn't cure the default. Excuse me. Was that affirmed by the First Circuit or by the bankruptcy appellate panel? By the bankruptcy appellate panel, Your Honor. I apologize for that. And in 2012, the prior owner of the mortgage started a judicial foreclosure action relating to the undeveloped parcel. U.S. Bank purchased the note and then took the judgment of foreclosure. So what is the point of all this history, Counsel? Are you trying to say that even within the six-year statute, they had plenty of time to try to protect themselves? No, the point I'm making, Your Honor, is that there is no duty between HLC. Even if the six-year statute didn't apply, there's no duty that HLC had to U.S. Bank. And even if they stepped into the shoes of the prior mortgagor, the original mortgagor lending tree, there's no special relationship to the people. They're sophisticated entities. They're dealing with a service contract where HLC was the closed loan. Are you suggesting that we consider this as an alternative ground? Yes, Your Honor. I was trying not to be repetitive with respect to my brother's arguments. And this was another defense that we raised at the lower court that can be affirmed at this level. But with that being said, I will rest my papers at this time. Thank you, Your Honor. Your Honors, I'd like to address a couple of issues that were raised during Lee Pelley's arguments. First, the 12B6 standard is critical in this matter, the facts alleged. The facts alleged have to be read in a light most favorable to the plaintiff. Have those facts alleged been read in a light most favorable to the plaintiff? At the very least, plaintiff's claims against the plaintiff's claimants against First American would have survived under a six-year statute of limitations. Nevertheless, it's also the plaintiff's contentions, had they been read in a light most favorable and 751 interpreted broadly, as is the policy for statute of limitations, then that would have enabled all counts to remain. Where has the Maine Supreme Court said that? That 751 should be interpreted broadly? The statute of limitations, Justice Jackson has stated that. Justice Jackson, with all due respect, didn't sit on the Maine Supreme Court. No, that's true. We're dealing here with state law, and policy arguments are relevant only insofar as they're the policy of the law court with respect to Maine statutes. Well, yes, Your Honor, except for the Supreme Court being the law of the land, obviously the Maine Supreme Judicial Court would be best served by following Justice Jackson as well. But long history of Maine mortgages does have a history of recognizing the 20-year statute of limitations. Aren't you really asking us to rewrite the Maine statute in light of these policy issues that you raise? I don't know how we could accept your argument without disregarding the plain language of the statute of limitations. Well, no, Your Honor, I'm not asking for the statute to be rewritten so much as I'm asking it to be given the full effect. In the case of Johnson v. McNeil, it held that a six-year statute of limitations applied to debt obligations, but the 20-year statute applies to mortgages. So I'm not asking anyone to rewrite it so much as to clarify it for Maine law and clarify it under Maine law. And that's why I request that the district court's judgment be reversed and remanded. Thank you. We're going to take a five-minute recess before we do the last two cases.